## SUPREME COURT.

Rose Levy et al. agt. Jane Ann Merrill.

*Mortgage — presumption of payment — action to cancel.*

Where a bond and mortgage, given by a father, were found by his children at his death, amongst his papers, the same having been in the father's possession for many years, and no claim having been made for either principal or interest for a period of ten years, the presumption is, that the mortgagor and his children were lawfully in possession of the bond and mortgage, and that the same are paid.

An action may be maintained to have a bond and mortgage declared to be of no validity, although the land upon which the mortgage is claimed to be a lien, has been sold by the heirs of the mortgagor, when a part of the consideration money, equal to the amount of the mortgage, has been retained and deposited in a trust company, to abide the event of an action to determine the validity of the bond and mortgage.

*Townsend* agt. *Goelet* (11 *Abb. Pr.*, 187) distinguished.

*Special Term, October,* 1876.

*Andrew Blake,* for plaintiff.

*T. C. Campbell,* for defendant.

Van Vorst, *J.* — The bond, the payment of which is secured by a mortgage, is dated the 15th day of November, 1864. By the condition written in the bond, $1,000 was to be paid upon the 1st day of May, 1865, and the further sum of $1,000 on the 1st day of August, in the same year. The bond bears a receipt, dated the 11th day of January, 1865, acknowledging a payment thereon of $1,000, signed by the husband of the mortgagee, who it appears was her agent in

the matter. There is no evidence written on the bond of any further payment, nor is any receipt produced of any such payment. But the fact that the plaintiffs are in possession of the bond and mortgage, and now bring the same into court as their property, is presumptive evidence that they are so legally and properly. This presumption is greatly strengthened by the fact, that the bond and mortgage were in the possession of their father, one of the mortgagees, for many years and up to the time of his death; that it was found among his papers by the plaintiffs, after his decease, and that they, his children, have held it up to the present time. Further force is given to this presumption by the additional fact that the mortgage was due more than ten years ago, and no interest has been paid in the mean time, and no proceedings have been taken by the mortgagee, for the foreclosure of the mortgage, nor any step hostile to the plaintiffs' claim that the mortgage is fully paid (2 *Greenlf. on Ev.*, §§ 527, 528). The mortgagors are dead and their lips are closed, but the children testify that since their parents' death no demand has been made upon them for interest.

The above facts raise a reasonable presumption that the bond and m rtgage are paid, and unexplained justify the position taken by the children, that the mortgage should be satisfied of record. A witness is also produced by the plaintiffs, who testifies that in April, 1865, he went with Morris Hartz, one of the mortgagors, to the store of the husband of the mortgagee, and that then and there the mortgagor paid the husband of the mortgagee a sum of money, and received from him a bond and mortgage; that the payment made was spoken of as a last payment, and that Morris Hartz said, "I want my mortgage paper," and the same was delivered to him.

To meet this case, the husband of the mortgagee swears, that but one payment has in fact been made upon the mortgage, viz., that of January, 1865. That at the time said payment was made, he not only receipted the same on the bond,

but gave Morris Hartz a duplicate receipt. That Hartz, after making the payment, asked the husband of the mortgagee to let him take the bond and mortgage, as he desired to show some person named by him that a payment had been made thereon. That he acceded to such request and delivered the bond and mortgage for such purpose. That Morris Hartz not returning the mortgage and bond the next day, or the day after, he called upon him and demanded the papers, which were refused, and that the same have been since withheld from him. The testimony of the husband of the mortgagee is, to some extent, corroborated by the testimony of a witness who claims to have been present. But it is not an entire corroboration of all the evidence of the husband of the mortgagee on this subject. This witness, however, locates the time of payment of money in January, and that the papers were then handed to Morris Hartz.

There are circumstances which greatly weaken the position of the husband of the mortgagee and herself, with respect to this claim, that the mortgage is unpaid, and these may be stated shortly as follows: Before this suit was commenced, the plaintiffs, with a notary public, called upon the mortgagee and demanded a satisfaction of the mortgage. She declined in the absence of her husband to execute the same; but then made no claim that the mortgage was unpaid; contrarywise said, she supposed it was settled, but referred the parties to her husband. I think if the mortgage had been taken from her husband in the manner he now claims it was, and the same was in fact unpaid, that she would probably have been advised of the fact, and would have had some information upon a subject in which she had a direct pecuniary interest; and especially so, when so much time had elapsed since the mortgage by its terms became due and payable. When called upon for a satisfaction, the husband of the mortgagee did say that the mortgage was unpaid. But he made no claim that the mortgage had been delivered by him to one of the mortgagors, under the circumstances stated

by him on the trial. I am of opinion that he would naturally have made such claim, if true, when the mortgage was so presented by the notary public for satisfaction. I think if his claim was true, he would promptly, at that time, under the impulse of the occasion, have avowed the wrong which had been done him ; but he was silent on that subject, claiming only that the mortgage was unpaid. The notary public denies, however, that the husband of the mortgagee claimed there was any thing due upon the mortgage.

The notary testifies that he supposed there was a receipt for the remaining $1,000, and so stated to the husband of the mortgagee, and that he also told him that he should know whether it had been paid ; and that the husband of the mortgagee said if a receipt was produced, he would satisfy the mortgage. Now in such a discussion, at that time, it would seem that the husband of the mortgagee would, if the fact was truly so, have made a claim that he had been, in fact, defrauded out of the possession of the mortgage. It was useless to say if a receipt was produced he would satisfy it, when he well knew no such receipt was in existence.

The delay of the mortgagee in making any claim, and only interposing same when affirmative action was taken by the heirs of the mortgagors, for the satisfaction of the mortgage, is unfavorable to the claim of its non-payment. It is true that the husband of the mortgagee says, that when he failed on request to obtain a restoration of the mortgage, he consulted a lawyer, who is now dead, and that this lawyer advised him that no steps were necessary, as the mortgagor could do nothing with the mortgage, and that the matter would come out by and by.

This statement is not an entirely satisfactory explanation of an omission, to take action in the premises, for a period of over *ten years*. It is also unfavorable to the position of the mortgagee, that this distinct claim was not interposed in an effective way in the life time of Morris Hartz, who was the person best qualified to make any contradiction of the

claim, that the mortgage is not in part paid, and who could alone have explained the manner in which, and the time when, he obtained possession thereof.

Upon a review of the whole evidence, and upon the most careful consideration, I am compelled to the conclusion that the mortgage is paid. This result is only reached by a rejection of the defendant's claim, and the evidence by which it is attempted to be supported. It is a painful duty in this way to set aside the evidence adduced in support of the defendant's position; but I am of opinion that all the presumptions and suggestions of what is both probable and reasonable, under the circumstances of this case, unerringly lead to the conclusion, that the mortgage is paid and should be satisfied. Why should the husband of the mortgagee place in the hands of the mortgagor, the debtor of his wife, with permission to take away the only evidence of the debt, for the purpose of showing a stranger that a payment had been made upon it, when he held in his hand a receipt acknowledging that payment? Why should he give the mortgage, as well as the bond, when it was the latter paper only which bore the evidence of payment? And when, after the lapse of years, the party to whom the papers were delivered being dead, and his children asking for a satisfaction, should he refrain from promptly asserting what he claimed to be facts, which would explain the manner in which the mortgage had come to their father's possession, as a reason for his refusal to satisfy same, and aver his readiness to execute a satisfaction, if a receipt was produced when he knew no receipt had been given?

These questions naturally arise from a consideration of the case, and no satisfactory answer can be found in the evidence or in reason. The remaining question is, can this action to compel a satisfaction be maintained? The heirs have conveyed the lands covered by the mortgage to a third party, but the purchaser has withheld an amount of the purchase-money sufficient to pay the amount claimed to be unpaid

upon the mortgage, and the same is deposited in the trust company to abide the event of a proceeding to procure a satisfaction of the mortgage, and to pay whatever may be found due thereon. So long as the mortgage remains unsatisfied of record, the plaintiff cannot realize the full consideration for the sale and conveyance of the premises.

The rule is, without doubt, that a person who has no longer any interest in the land, cannot maintain an action to remove an apparent lien upon the land, on the ground that it is a cloud upon the title. I am referred, by the counsel for the plaintiff, to the case of *Townsend* v. *Goelett* (11 *Abb Pr. R.*, 187), as decisive against the plaintiffs' right to maintain this action. That case is clearly distinguishable from the present. It was there held that a grantor who has no longer any interest in the land, cannot maintain an action to remove an apparent lien thereon, on the ground *that he agreed with his grantor* that he would procure *the lien to be discharged.* The incumbrance sought to be removed was a judgment, not against the plaintiff, but against a third person. The plaintiff was in no way privy, party to, or connected with the judgment, nor as between him and the judgment creditor was he bound to pay it. Not holding a title to the land, the plaintiff had agreed to procure the land to be discharged from the lien. Such agreement did not authorize him to maintain an action against the judgment creditor for the removal of the lien.

In this case there is privity between the plaintiff and the mortgagee. *Runill* agt. *Keller* (60 *Barb., p.* 617), to which I am also referred, decides only that a party cannot maintain an action to remove a cloud from the title to land in which he has no interest, upon the *sole ground* that *he has warranted the title.* That is not this case. But this last case suggests that if the action was for relief against a bond, accompanying a mortgage, claimed to be cloud upon the title, and by which he was endangered, he might, upon sufficient allegations, be entitled to relief through " *quia timet.*"

This suit is in effect to have the bond, as well as the mortgage canceled, and declared to be of no further validity, on the ground that the bond is in fact paid, and that their existence, and the record of the mortgage, prevent the plaintiffs from realizing the proceeds arising on the sale of the land.

The money part of the consideration arising from the sale in the trust company, represent *pro tanto* the land, and by the claim under the bond and mortgage, and its outstanding record, is locked up. Plaintiffs, as long as this claim and record are made and unsatisfied, cannot reach this money. I cannot see but that the plaintiffs are practically without remedy in the premises, unless this action be maintainable. The mortgagee has for ten years refrained from taking any proceedings to enforce it, and upon application has refused to execute a satisfaction.

If the defendant has, in truth, any claim under the mortgage, she can assert it here as she has done under her answer.

I can conceive no better way in which the matter may be determined than in this action. The other cases and authorities to which I have been referred I do not regard as against the plaintiffs' right to sustain this action. The bond being in fact paid, as is above decided, the plaintiffs are entitled to judgment, that the defendant upon presentation execute a satisfaction of the mortgage, and that the bond be adjudged to be satisfied and paid, and the record of the mortgage be effectually discharged.

That the plaintiffs recover their costs of this action.