THEODORE PEREZ ET UX., APPELLANTS, VS. THE BANK OF KEY WEST, APPELLEE.

36 467
36 494
36 467
37 433
36 467
39 452

1. In this case, which is a bill for foreclosure of mortgage, the evidence summarized upon which it is held that there can be no doubt that the specific draft claimed to have been secured by the mortgage was paid before suit was brought, and that the proof fails to show that complainant was the holder and owner of such draft either at maturity or at the time of bringing suit.

2. The possession of a negotiable paper by parties liable upon it is strong presumptive evidence of its payment.

3. Where the decree of a chancellor is unsupported by and contrary to the evidence it should be reversed.

Appeal from the Circuit Court for Monroe county.

The facts in the case are stated in the opinion of the court.

*John A. Henderson*, for Appellants.

*R. W. Williams*, for Appellee.

LIDDON, J.:

The appellee brought its bill in chancery against appellants in the Circuit Court to foreclose a mortgage given by them to appellee. The brief of counsel present many questions of law for the consideration of the court. In our opinion, however, the appellants, who were defendants below, fully sustained their answer alleging payment of the mortgage, and denying ownership by camplainant of the draft alleged to be secured by the mortgage.

The decree should have been for the defendants upon the facts. Other questions, therefore, presented by the record need not be considered.

The mortgage, of which foreclosure was sought and decreed, was upon certain real estate, and recited in the introductory part thereof that the mortgagors (appellants) were justly indebted to the Bank of Key West (appellee) in the sum of one thousand dollars, and that the mortgage was given "for the better securing the payment of the said sum of money." The condition expressed in the mortgage, among others not necessary to consider, is, that "the said Theodore Perez and Ysolina Perez, his wife, (their) heirs, executors or administrators shall well and truly pay unto the said party of the second part (appellee), its heirs, executors, administrators or assigns the said sum of money represented by one of Cespedes, Perez & Navarro's drafts, with interest, according to the true intent and meaning thereof, together with all costs, charges and expenses, including reasonable attorney's fees which the party of the second part may incur or be put to in collecting the same by foreclosure or otherwise." The bill of complaint alleged that the draft intended to be secured by the mortgage was one for $1,030, executed by Cespedes, Perez & Navarro May 20th, 1885, payable sixty days after sight to the order of the Bank of Key West, drawn on Cespedes, Perez & Navarro, No. 121 Maiden Lane, New York, and accepted by them, dated New York, May 20th, 1885. The bill alleges further that said draft was "sent by complainant to the Importers and Traders National Bank, New York, for collection, but shortly before its maturity the defendants executed and delivered to your orators the aforesaid mortgage to secure the payment of the sum represented by said draft, whereupon your orators ordered said draft returned to them from said Importers and Traders National Bank of New York, and the endorsements on said draft were can-

celled, and your orators remain the holders and owners of the same, together with the mortgage given to secure the principal sum, to-wit: $1,000, with costs and charges." The draft mentioned was attached to the bill of complaint, and besides the description of it already given, it was numbered in the margin on its face as follows: "No. 188, New York," and acceptance written upon the face as follows: "May 25th, 1885—188, accepted, and payable at 121 Maiden Lane. Cespedes, Perez & Navarro." Upon the back were the following endorsements: "Pay to the order of E. Townsend, cashier, for collection and credit, the Bank of Key West. Geo. W. Allen, cashier," and "received payment, the Importers and Traders National Bank, New York." These endorsements were erased or marked out with pen marks. This draft for convenience, is hereinafter frequently referred to as draft No. 188. The answer of the defendants emphatically denied that the mortgage in question was intended to secure the specific draft sued upon, and alleged a payment of the same at the maturity thereof. It also denied that complainant was the owner of said draft when the same became due, that the same had passed out of the possession of complainant, and out of the possession of the Importers and Traders National Bank of New York, and that at the time of payment the same was deposited, as the property of Cespedes, Perez & Navarro, in the safe of F. Castillo & Co., successors to Cespedes, Perez & Navarro, who paid the same for Cespedes, Perez & Navarro, and so remained until September 27th, 1885, when complainant attached the property of Castillo & Co. and took possession of the aforesaid draft and a large number of other drafts of said parties.

Briefly, as possible, summarizing the evidence taken upon the issue raised by replication to the answer, we find from the testimony of J. F. Navarro that he was in New York at the time of the acceptance and payment of the draft in question, and that he had a record of the same kept by him, which he produced on examination. From this book it appeared that said draft No. 188 was presented at 121 Maiden Lane, New York, July 27th, 1885, by a messenger of the Importers and Traders National Bank; that in payment thereof there was delivered to said messenger a check, No. 4, of Castillo & Co. on the American Exchange National Bank of New York for the same amount, $1,030; that the draft, No. 188, remained in the safe of Castillo & Co., with others which had been paid; that the check, No. 4, given in payment of draft No. 188, was honored and paid to the Importers and Traders National Bank by the American Exchange National Bank; that the draft, No. 188, was stamped: "Received payment, Importers and Traders National Bank, New York," on the back of same; that this stamp had been erased since witness last saw the paper. Thomas F. Gray, who had been book-keepers for Castillo & Co., fully corroborated the witness Navarro as to the matters contained in the book containing record of payment of draft. Dumont Clarke, Vice-President of the American Exchange National Bank, of New York, testified that a check for $1,030 was drawn on said bank by Castillo & Co. on July 27th, 1885, and on same day was paid by said bank. Witness was unable to say in whose favor the check was drawn, or to whom the same was paid. Geo. W. Allen, the principal witness for complainant, its cashier, and who principally conducted its business with defendants and with the firm of Cespedes, Perez & Navarro, admits that the

draft sued upon has been out of the possession of the complainant, and out of the possession of the Importers and Traders National Bank, of New York, to whom it was sent for collection, and that it was in the hands of Castillo & Co., of New York City, when the property of said Castillo & Co. was attached by the sheriff in New York, and it was delivered by the sheriff, with other papers of Castillo & Co., to Mr. Snow, the attorney of the Bank of Key West, in New York, and sent by Mr. Snow to the Bank of Key West. This witness stated that he did not know by whom the receipt of payment by the Importers and Traders National Bank was put upon the draft, nor by whom it was erased. In view of this positive testimony there can be no doubt that the specific draft claimed to have been secured by the mortgage was paid. The possession of it by the parties liable upon it is strong presumptive evidence of its payment. This presumption of payment by possession being accompanied by a stamped endorsement of receipt of payment by the bank which held it for collection, and the testimony of witnesses recited, is so fortified in our opinion to be conclusive. Randolph on Commercial Paper, sec. 1475 *et seq.*; 18 Am. & Eng. Ency. of Law, p. 206; Levy vs. Merrill, 52 How. Pr. 360; Tedens vs. Schumers, 112 Ill. 263, text 268; Close vs. Fields, 9 Tex. 422; Hays vs. Samuels, 55 Texas, 560; Callahan vs. First National Bank, 78 Ky. 604, S. C. 39 Am. Rep. 262; Lipscomb vs. DeLemos, 68 Ala. 592; Hill vs. Cayle & Bower, 1 Ala. 275; Blount vs. Starkey, 1 Taylor (N. C.) 110; Sutphen vs. Cushman, 35 Ill. 186. Neither has the complainant sustained the allegation of the bill of complaint, that it was the holder and owner of the draft at the maturity of the same, and at the time of bringing suit. Neither does the proof

show that it was returned to complainant by its direc-
tion from the Importers and Traders National Bank.
On the contrary, the principal witness for complain-
ant, Geo. W. Allen, its cashier, admits that it was
sent to complainant by a Mr. Snow, its attorney in
New York, who had received it from the sheriff who
had levied an attachment upon the property of Cas-
tillo & Co.  This does not show the draft was right-
fully in the possession of the complainant.  We know
of no authority in the sheriff who levies an attachment
to take property of the defendant and deliver it to the
plaintiff.  The complainant did not fairly or candidly
state its case when it alleged (inferentially) in its bill
of complaint that the draft had been returned to it by
the bank which held it for collection, and that it was
in possession and the holder thereof.  Its possession
was not a proper or legal possession.  It was not the
holder and owner of the draft, and these facts were or
should have been known to complainant at the time it
filed its bill of complaint.

Having failed to prove their case, as stated in their
bill of complaint, the complainant attempts to prove
other matters not alleged in its bill, to avoid the force
and effect of the evidence offered by the defendant to
sustain its answer.  Without disputing the facts upon
which defendants assert their claim of payment of the
draft No. 188, the complainant contends that payment,
as a matter of fact, did not result to it by reason of the
payment of said draft.  This contention is predicated
upon a claim that while the specific draft was paid and
cancelled, that complainant furnished the money with
which to pay same.  Some evidence was offered upon
this subject.  Without entering into any extended
comment upon the same, it is only necessary to say

that it wholly fails to support the contention based upon it.

A decree of a chancellor, especially if it be based upon the findings and report of a master in chancery, ought not to be reversed upon questions of fact, unless the evidence clearly shows that it was erroneous. Fuller vs. Fuller, 23 Fla. 236, 2 South. Rep. 426; Waterman vs. Higgins, 28 Fla. 660, 10 South. Rep. 97. While we are reluctant, upon a question of fact, to reverse a decree of a chancellor, we are convinced in this case that the decree is an erroneous finding upon the evidence, that it is unsupported by the evidence, and contrary thereto.

The decree of the court below is reversed with direction that the bill of complaint be dismissed.