LORENZO A. WILSON AND W. M. MASON, JR., CO-PARTNERS DOING BUSINESS AS WILSON-MASON COMPANY, AND LAKE BUTLER BANK, A CORPORATION, *Appellants*, v. ROSA C. DUNCAN, AS EXECUTRIX OF THE WILL OF L. A. DUNCAN, DECEASED, *Appellee*.

En Banc.

Opinion filed August 3, 1926.

Petition for rehearing denied February 9, 1927.

PER CURIAM.—Where the owner consigns cotton to his factors who make advances and charge interest thereon as

well as sell cotton retaining advances, interest, commissions and charges, and under circumstances of financial stress and the low price of cotton the factors secure from the owner an agreement to divide profit after all charges are paid should the price advance, the factors being reasonably secured if the price recedes, such agreement under the facts of this case, will not in equity be a defense against a bill for an accounting for all the profits after all charges are fully paid.

An Appeal from the Circuit Court for Union County; A. V. Long, Judge.

Decree affirmed.

*Marks, Marks & Holt* and *Herbert Lamson,* for Appellants;

*Telfair Knight, Thomas W. Fielding* and *W. S. Broome,* for Appellee.

On Petition for Rehearing.

PER CURIAM.

1. A chancellor in the trial of an equitable cause upon its merits is presumed to arrive at his conclusions of fact after a careful and conscientious consideration of the evidence and if the appellate court after a careful consideration of the record is unable to discover that the chancellor has clearly erred in his conclusions of fact it will not disturb his findings.

Petition denied.

· *Marks, Marks & Holt* and *Herbert Lamson,* for Appellants;

*Telfair Knight, Thomas W. Fielding* and *W. S. Broome,* for Appellee.

### En Banc.

PER CURIAM.—The appellants, cotton factors, held a large quantity of Sea Island cotton for Duncan upon which the factors had advanced 80% of its value. The market price of the cotton declined and the price of the cotton was below the amounts advanced.. The carrying charges were heavy. To meet these expenses and to secure indebtedness Duncan made a bill of sale of the cotton on February 8, 1919, which was in effect a mortgage, and the bank then dealt with the factors. On February 12, 1919, the bank contracted with the factors to pay the carrying charges for ninety days, the factors having the privilege of selling the cotton should the price decline below stated figures. On March 28, 1919, before the expiration of the ninety days and when the market price of the cotton was not below the prices stipulated in the contract of February 12, 1919, but an advance in prices immediately followed, an agreement was entered into between counsel for the bank and the factors, and consented to by Duncan, as follows:

"March 28, 1919.

Wilson-Mason Company,
                    City.

Gentlemen:—

"In re Lake Butler Bank-L. A. Duncan Cotton Deal.

"Please refer to the agreement made with you by the Lake Butler Bank under date of February 12th, 1919, in connection with which this letter is written.

"We are advised by you that the market price of long staple cotton is lower by 3 cents a pound that it was when

the aforesaid agreement was entered into, and that you cannot afford to carry the said cotton any longer unless new arrangements are made.

"We have noted your alternative suggestion that we either put up a margin of Six Thousand Dollars ($6,000.00) or agree to share with you equally such proceeds of the sale of this cotton when made as are in excess of all the carrying charges and advances now owing and which shall become owing against the said cotton.

"Since we are unable to put up any margin we are going to have to accept your other suggestion, and this latter will serve as our acceptance thereof. The proposition as we understand and accept it is as follows: The carrying charges and advances which you claimed against this cotton on February 12th, 1919, amounted to approximately One Hundred and Thirty-eight thousand Dollars ($138,-000.00); these charges are increasing at the rate approximately Fourteen Hundred Dollars ($1400.00) a month since February 12th, 1919; while the Lake Butler Bank has agreed to advance these carrying charges for ninety days after February 12th, 1919, our understanding is that when the cotton is sold you will first take out of the proceeds your aforesaid charges or approximately One Hundred and Thirty-eight Thousand Dollars ($138,000.00) and will then repay to the Lake Butler Bank out of the proceeds such an amount as it has advanced for carrying charges since February 12th, 1919, before any division of the balance of the proceeds is made; any surplus remaining after these charges are all paid will be divided between yourselves and the Lake Butler Bank equally.

"Mr. Duncan has made a Bill of Sale of all of his interest in the cotton to the Lake Butler Bank and has no further rights in the said cotton but we will see that Mr. Duncan consents to our receiving only one-half of the sur-

plus of the proceeds of the sale of this cotton over the carrying charges instead of all of the said surplus to which we were heretofore entitled because we have agreed with him to credit on his indebtedness to the Lake Butler Bank all that we receive net above expenses from the sale of this cotton. We are making this arrangement to save Mr. Duncan and the Lake Butler Bank from losing all possible profit from the sale of the cotton.

"We understand that in consideration of this agreement on our part you will agree to carry this cotton, provided that the market does not decline below the present prices of 46 cents for No. 3, 47 cents for No. 2 and 48 cents for No. 1 grade, until it is mutually agreed between us to sell it, provided Lake Butler Bank continues to pay carrying charges as provided in said agreement dated February 12th, 1919.

"It is also specifically agreed that the Lake Butler Bank assumes no liability whatsoever for any losses which may be incurred in connection with this cotton, but that the Wilson-Mason Company still retains its right to collect such losses if any from L. A. Duncan.

Yours very truly,

(Signed)    KNIGHT & GUEST.

Accepted:....................1919.

WILSON-MASON COMPANY

By.........................
    Member of the firm.

I consent to the above agreement 3/29/19.

(Signed)    L. A. DUNCAN."

Later the cotton was sold at a large profit and the factors retained one-half of the profits after all debts and expenses were paid, claiming a right to do so under the agreement of March 28, 1919.

L. A. Duncan sued for an accounting and full payment, making the factors and the bank defendants. Upon the death of complainant his executrix was made complainant. The court dismissed the bank and decreed for the complainant. The defendant factors appealed, assigning many rulings as error. The appellee filed cross-assignments of error asserting excessive charges made by the factors to have been allowed by the decree.

Several months after the quoted agreement of March 28, 1919, Duncan repudiated it; and upon the sale of the cotton Duncan demanded all of the proceeds after the factors' advances, charges, etc., and the indebtedness to the bank had been fully paid.

After a careful consideration of the voluminous testimony and other evidence, no material error appears in the record. In view of the relations of the parties as principal and factors and as mortgagee and agent of the owner Duncan, and considering the circumstances of stress affecting all the parties, especially Duncan, under which they transaced this business, and particularly the circumstances attending the signing of the agreement of March 28, 1919, such agreement was not legally or equitably binding on Duncan, and the factors must be held to have known that the right of the bank in the cotton was that of a mortgage creditor and agent of the owner.

The factors were secured without the provision for a division of profits. The losses, if any, were to be borne by Duncan the owner of the cotton.

The assignments and cross-assignments are overruled and the decree appealed from is affirmed.

WHITFIELD, P. J., AND ELLIS, TERRELL AND BUFORD, J. J., concur.

BROWN, C. J., AND STRUM, J., dissent.

PER CURIAM.—The conclusion reached by the court in this case was not only justified but required by the evidence and the rules of decision by which appellate courts are guided. At least such was and now is the opinion of a majority of the members of this Court as now constituted.

The record is a voluminous one. It consists of one thousand and ninety pages of typewritten matter of which the pleadings, exhibits, orders and a large part of the transcripts of the record in two former appeals and other documents cover about one hundred and ninety-five pages and the remainder of the record, about eight hundred and fifty pages, consists of the evidence, orders of court and notices relating thereto.

To the minds of the solicitors who directed the preparation of this voluminous record it was necessary to present the simple question whether cotton factors will be permitted, without full disclosure to their principal whose cotton they hold, of all material information which they possess affecting the trust fund in their hands, to speculate with it to their own advantage and to the detriment of their principal.

The chancellor, from whose decree the appeal was taken, presumably arrived at his conclusion after a careful, thorough and conscientious consideration of the evidence and a majority of the members of this Court, after a careful reading of the record, following a rule of decision which the Court has consistently followed for more than half a century, were unable to discover, with such assistance as appellants' solicitors were able to furnish, that the chancellor had clearly erred in his conclusion of facts and in his decree. See Fuller v. Fuller, 23 Fla. 236, 2 South. Rep. 426; Waterman v. Higgins, 28 Fla. 660, 10 South. Rep. 97; Perez v. Bank of Key West, 36 Fla. 467, 18 South.

Rep. 590; Dean v. Dean, 36 Fla. 492, 18 South. Rep. 592; City of Jacksonville v. Huff, 39 Fla. 8, 21 South. Rep. 774; Hopkins v. O'Brien, 57 Fla. 444, 49 South. Rep. 936; Sarasota Ice, Fish & Power Co. v. Lyle & Co., 58 Fla. 517, 50 South Rep. 993; Ferrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216; Simpson v. First Nat. Bank of Pensacola, 74 Fla. 539, 77 South. Rep. 204; Lewter v. Price, 25 Fla. 574, 6 South. Rep. 439; Davidson v. Collier, 75 Fla. 783, 78 South Rep. 983; Cobb v. Cobb, 82 Fla. 287, text 290, 89 South. Rep. 869; Viser v. Willard, 60 Fla. 395, 53 South. Rep. 501.

The petition for a rehearing is denied.

ELLIS C. J., AND WHITFIELD, TERRELL AND BUFORD, J. J., concur.

STRUM AND BROWN, J. J., dissent.