THE WASHINGTON LOAN AND TRUST COMPANY, a corporation, as Executor, *Appellant,* vs. DAVID O. HUTCHINSON, *Appellee.*

144 So. 343.

Opinion filed October 18, 1932.

*Don Register,* for Appellant;

*Olliphant & Olliphant* ,for Appellee.

PER CURIAM.—The following portion of an opinion prepared in this case by Mr. Commissioner Mathews is agreed to by a majority of the Court and is adopted as its opinion in the premises:

"Thomas B. Hutchinson, late of the City of Washington and District of Columbia, died on March 17th, 1928, at the age of eighty-six years. He made his Last Will and Testament in April, 1925, in which he made liberal provision for his wife during her life-time and provided also for payment of certain parts of the income from his estate to his brother David O. Hutchinson, and to his sisters Margaret Hutchin-

son Grant and Lucinda Hutchinson Champion during their several lives. The deceased had no children. Then, in the latter part of October, 1926, a little less than seventeen months before his death, which occurred in March, 1928, Thomas B. Hutchinson secretly delivered to his brother, David O. Hutchinson, the defendant in this cause, in Washington, D. C., $37,000.00 of negotiable securities.

"After the death of Thomas B. Hutchinson in March, 1928, Letters Testamentary were issued in December, 1928, to The Washington Loan and Trust Company, a corporation, complainant in this suit; and in January, 1929, this suit was filed in the Chancery Court of Polk County, for the purpose of setting aside the transfer of securities made by Thomas B. Hutchinson to David O. Hutchinson in October, 1926, on the ground that the securities were delivered as a gift and at the time of the delivery, the donor was not mentally capable of making a gift and was subject to undue influence on the part of the donee. The answer of the defendant admitted that he received the securities from his brother in Washington, D. C., alleged that they were a gift from his brother and denied that his brother was mentally incapable and further denied undue influence.

"Testimony was taken, and upon final hearing the court below entered final decree declaring the securities to be a valid gift from Thomas B. Hutchinson to David O. Hutchinson and dismissing the bill of complaint, and from the final decree this appeal was entered.

"Six errors are assigned as having been committed by the court below, in rendering the final decree. All the assignments of error raise the same question, that is, whether the alleged gift of the $37,000.00 of securities delivered by Thomas B. Hutchinson to his brother, David O. Hutchinson, was a valid gift.

"The allegations of the bill of complaint and the testimony taken pursuant thereto, bear upon two points in issue:

the mental capacity of Thomas B. Hutchinson to make a gift and the undue influence exerted over Thomas B. Hutchinson by David O. Hutchinson, recipient of the alleged gift.

"The degree of proof required for setting aside a gift *inter vivos* is much less than the degree required for setting aside a Will. Hutchenson v. Bibb, 142 Ala. 546, 38 Sou. Rep. 754.

"But where it is attempted to establish a gift after the death of the alleged donor, the proof necessary to establish the gift must be clear and convincing. Garner v. Bemis, 81 Fla. 60, 87 Sou. Rep. 426.

"Where a confidential relation exists between the donor and donee at the time of the gift, it is generally considered to be presumptively void, and the burden of proof is on the donee to show the absolute fairness and validity of the gift and that it is free from the taint of undue influence. 12 R. C. L. 972.

"In the vast majority of instances, undue influence naturally has a field to work upon in the condition or circumstances of the person influenced, which render him peculiarly susceptible to yielding—his dependent or fiduciary relations towards the one exerting the influence, his mental or physical weakness, his pecuniary necessities, his ignorance, lack of advice, and the like; and the doctrine of equity concerning undue influence is based upon principles of the highest morality. It reaches every case and grants relief where influence is acquired and abused or where confidence is reposed and betrayed. It is especially active and searching in dealing with gifts. Pomeroy's Equity Jurisprudence, 3rd edition, Volume 2, pages 1736, 1737, 1738.

"Wherever there exists such a confidence, of whatever character that confidence may be, as enables the person in whom confidence or trust is reposed to exert undue influence over the person trusting him, the court will not allow any

transaction between the parties to stand unless there has been the fullest and fairest explanation of every particular resting in the breast of the one who seeks to establish contract with the person so trusting him. Pomeroy's Equity Jurisprudence, Volume 2, pages 1747, 1748.

"The principle is applied with great emphasis and rigor to gifts. Pomeroy's Equity Jurisprudence, 3rd Edition, Volume 2, page 1751.

\* \* \* \* \* \* \* \* \* \* \* \*

"In some jurisdictions, where a confidential relation exists between the donor and the donee, the validity of a gift depends upon whether or not the donor had independent advice; and even where this rule is not recognized as controlling, it has been held that the question whether the donor received independent advice is a material one to be considered with other surrounding facts and circumstances, such as the nature and purpose of the gift and the condition and relation of the parties. 28 Corpus Juris, 654.

"Where the relations between the parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but either on one side, from overmastering influence, or on the other from mental weakness, unfair advantage in the transaction is rendered probable, then the burden is shifted, the transaction is presumed void, and it is incumbent on the stronger party to show affirmatively that no undue influence was used and that all was fair, open, voluntary and well understood. 28 Corpus Juris, 671."

But on the basis of the Commissioner's foregoing statement of the law, and a consideration of the record, a majority of the Court think that no reversible error has been made to appear.

It is not to be gainsaid that there is evidence in the record from which the Chancellor could have found a decree for the appellant. But after a trial of the cause upon

its merits, the Chancellor, who is presumed to have arrived at his conclusions of fact after a careful and conscientious consideration of the evidence, arrived at the conclusion that the proof had not made out a case sufficient to justify a decree in favor of complainant, and dismissed the bill.

The rule in such cases is that we cannot reverse the Chancellor on the facts alone unless it has been made to appear that the findings of the Chancellor are clearly wrong on the evidence, in cases where there is some evidence from which the Chancellor could have found as he did. Wilson v. Duncan, 92 Fla. 470, 112 Sou. Rep. 48; Heinisch v. Mills, 100 Fla. 1600, 132 Sou. Rep. 109.

From a study of the record a majority of the Court have concluded that the Chancellor's findings to the effect that at the time of the delivery of the securities, the donor, Thomas B. Hutchinson, was mentally capable of making a gift and was not induced to do so through undue influence on the part of the donee, should not be disturbed, although the evidence may be contradictory and the inferences to be drawn therefrom may be sufficient to support a conclusion to the contrary. Jacksonville Properties, Inc. v. Manhattan Beach Co., 102 Fla. 865, 136 Sou. Rep. 506.

The final decree appealed from is affirmed.

BUFORD C.J. AND WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.