KANNER, Acting Chief Judge.
This litigation was instituted by Sarah Rowland for the purpose of having the court declare as void a deed dated August 3, 1930, through which the now deceased sister of Sarah, Annie E. Shumate, conveyed to their niece, Margaret Blanche Brown Polk McCall, certain property willed to her by her brother, Thomas Shu-mate, Jr. The basis upon which the suit was brought was that the appellee-defend-ant had occupied a confidential and fiduciary relationship with the deceased and that through this relationship she procured execution of the deed. The chancellor in his final decree upheld the deed, and this appeal questions his findings.
The record of testimony consists of 1,479 pages. This is a story depicting present day activities of a family who chose a pioneer American way of life. Annie E. Shumate, herself an anachronism, is the main character. The story began sometime in the 1880’s when Thomas Shumate, Sr., and his wife Jennie, Annie’s parents, purchased around twenty-five acres of land in Bartow, Florida, and established what is now known as the Shumate homeplace. There they operated a dairy farm which eventually expanded to approximately fifty-seven acres. There were nine Shumate children, six of whom, including Annie, maintained throughout the years the same pattern of living for which their parents set the example, an existence in which frugality, austerity, and industry were the keynotes. These six were never married but remained on the homeplace until they died, except that Annie E. Shumate moved to Delaware shortly before her death to live with her niece, Blanche, the appellee. There were only two Shumate sons, Thomas, Jr., and David. These two in time acquired 200 acres of land separate from the Shumate family property, where they farmed and raised cattle; and it is this land about which the present controversy centers.
By the advent of the year 1921, the Shumate household consisted of the elder Shumates, their unmarried daughters, and two bachelor sons, all living in an unpainted house which boasted no electricity, no plumbing, and none of the usual conveniences which contemporary living at that time customarily afforded. All members of the household contributed, by dint of hard work, to the operation of the dairy farm. No one was paid a salary and all proceeds went back into the common till for needed expenses and operation of the farm. One of the sisters, Sarah, the appellant, married in 1921 and moved away; then in 1922, both the elder Shumates died. The next big change to occur in the lives of the Shumates residing on the homeplace was in 1925 when Blanche, then less than two years old, came to live with them. Her mother, Mary Brown, who had also married and moved away, continued to reside in the community of Kathleen until 1938, returning then to live at the home-place with Annie and Blanche.
*848 Blanche became the common responsibility of her spinster aunts and bachelor uncles. From early childhood she shared the onerous farm life of her aunts and uncles, assuming her part of the chores and oftentimes laboring on the 200 acre farm with her uncles. Blanche lived at the Shumate homeplace until 1955, except for a short time in World War II when she was in military service. During that time she was married, later had a child, Mary Elizabeth, and was subsequently divorced, returning with her daughter to the Shumate homeplace in 1944. She attended Florida Southern College and received a degree, and she taught school in nearby Highland City from 1947 until 1955.
In 1942, seventeen years after Blanche had come to the homeplace to live, her Uncle Dave died. Tom, following his father’s death, had been considered as head of the household, and after Dave died, Tom held legal title to the homeplace, the lands surrounding it, and the 200 acre farm which he and Dave had acquired. In 1947 Tom also died, leaving his entire estate to Annie. The only Shumate children who survived him were his sisters Annie, Sarah Rowland, and Mary Brown, mother of Blanche. Living at the homeplace were Annie, Mary Brown, Blanche, and Blanche’s daughter, Mary Elizabeth. At the time, the 200 acre farm was appraised at $65,000 and the remainder of Tom’s estate at about $41,000.
After Tom’s death it was not long before, for the first time, the Shumate home-place became illumined by electricity; a gas stove and gas refrigerator were acquired; modern plumbing was installed; the house was painted; the leaky roof was replaced with a new one; pastures were improved; modern forestation practices were introduced; and bank accounts were opened.
The dairy had been discontinued prior to the death of Tom. The work of the household after that consisted of raising crops and beef cattle. Annie, head of the household, was in her sixties; and she relied greatly upon Blanche, the only young person residing there, in the things that had to be done. Blanche was teaching school in the year her Uncle Tom died, and it was necessary that she do chores before and after school hours, working like a man, early and late. Thus, assisting her Aunt Annie with the farm operation, she did the necessary “leg work” and whatever else her aunt wanted her to do. During the course of the years Annie and Blanche had developed a closeness each to the other resembling a mother-daughter relationship.
Annie, however, was shrewd and intelligent, firm and stubborn in her convictions, and remained not only the titular but the very active head of the family until' she died, making her own decisions and staying, in the main, to herself and her family, seldom leaving the homeplace except for occasional visits with friends, but freely receiving visitors who might chance to call. She was somewhat hard of hearing, but was not deaf. For a woman her age, Annie was in comparatively good health until her first heart attack in February, 1955. Blanche had remarried in 1954; her husband was in Delaware in the Air Force, while Blanche remained at the Shu-mate homeplace, taking care of her Aunt Annie during her illness. When in 1955 Blanche resolved to join her husband in Delaware, Annie wanted to go with her and did go. She died there in November, 1955.
The deed executed by Annie to Blanche before her death was in August of 1950 following the closing of the estate of Thomas, Jr., in June of that year. Annie went to the office of an attorney who had been recommended by a close acquaintance as a “good land lawyer” and there requested him to prepare a deed whereby she might convey the 200 acre farm to Blanche. Blanche had known this attorney but had never employed his services. Accompanying Annie to the door of the lawyer’s office, Blanche excused herself. The attorney, learning of Annie’s mission, asked why *849 she did not will the land to Blanche instead of conveying it; but, stating that Blanche had been very good to her, Annie voiced her wish to execute the deed. This she did. The deed was witnessed by the attorney and a disinterested person; and when Blanche later returned, Annie gave her the deed and asked her to record it. Blanche did so under date of August 4, 1950.
Another attorney who represented Annie in other legal matters talked with her on several subsequent occasions; and although he knew of the conveyance to Blanche, the subject was never discussed between them. When Annie Shumate died, she left the old homeplace in equal shares to her two surviving sisters, Mary Brown and Sarah Rowland. Mary Brown refused to become a party plaintiff to this suit.
Prior to making the deed, Annie manifested her intention of giving the property to Blanche; and she subsequently acknowledged that she had done so and discussed the matter on at least two different occasions with the appellant, Sarah Rowland. At the time of the conveyance, it was known that there was a possibility the land contained phosphate, although it has never been prospected. Before executing the deed here concerned, Annie had made one conveyance of land to the school board and yet another after the subject deed was executed.
The position of the appellant is, in substance, that the difference in ages, personalities, interests, and educational equipment of Annie and Blanche was so marked that the attentions bestowed on Annie by Blanche could only have been because of Annie’s money and property. Mrs. Rowland says that a confidential and fiduciary relationship existed between these two covering a period of time from the summer of 1944 until Annie died, that before then the obligation of rearing Blanche was assumed by other sisters in the family. She points up Annie’s execution of the deed through an attorney other than the one who had customarily advised her in all her legal problems and cites testimony showing the close ties which existed between Blanche and Annie and the confidence and trust which Annie placed in the younger woman. She states that a gift tax which could be assessed against the estate of Annie E. Shumate because of the deed to Blanche would curtail the benefits which she and Mary Brown received and that Annie did not know of the existence of this tax. There are other allegations with reference to different circumstances and events questioned by Sarah Rowland in her contention that a confidential and fiduciary relationship between Annie and Blanche led to execution of the subject deed.
In supporting her contention that a confidential and fiduciary relationship existed between Blanche and Annie E. Shumate and that a presumption of undue influence by Blanche arose therefrom, the appellant relies, among others, upon the following Florida decisions: In re Aldrich’s Estate, 1941, 148 Fla. 121, 3 So.2d 856; Wilkins v. Wilkins, 1939, 141 Fla. 188, 192 So. 791; Rich v. Hallman, 1932, 106 Fla. 348, 143 So. 292; Quinn v. Phipps, 1927, 93 Fla. 805, 113 So. 419, 54 A.L.R. 1173; and Johnston v. Thomas, 1927, 93 Fla. 67, 111 So. 541. These cases, as well as many others, have been carefully considered.
The trial judge found that the acts of Blanche in assisting her aunt in running the farm and household were only ministerial acts and that there was no evidence that Blanche exercised any dominance over her aunt at the time of the conveyance. Even assuming a confidential relationship such as to raise a presumption of undue influence, he found that such presumption was overcome by clear and convincing evidence that the gift of farm property was made fairly, openly, voluntarily, and with full understanding by Annie E. Shumate. The judge found that the evidence dearly established the execu *850 tion of the deed as being free from fraud, duress, or undue influence, that Annie E. Shumate understood the nature and effect of executing the deed, and that it was her free act. He pointed out in his opinion that to sustain Sarah Rowland’s complaint would have the effect of disinheritance by Annie of Blanche, the one person who saw to her comfort and welfare. He thereupon held in his final decree that the equity of the cause was with Blanche and dismissed the case with prejudice.
We hold that the trial judge was correct in his findings and judgment. As trier of the facts, he heard the many witnesses who appeared, evaluated the conflicting testimony, sifted the evidence painstakingly to arrive at the findings here controverted by the appellant. Unless error is made clearly to appear, the findings of the chancellor who heard the testimony, if supported by the evidence and if the testimony is conflicting, will not be gainsaid by an appellate court. The testimony in some of its phases is fraught with conflicts; the chancellor’s findings are supported by the evidence; no error has been made to appear, and we find that the axiomatic doctrine of noninterference by an appellate court under such circumstances is applicable here. For cases upholding a chancellor’s findings as to the validity of a deed or gift under situations involving alleged confidential relationships and undue influence, see and compare Held v. Florida Conference Ass’n, etc., 1940, 141 Fla. 646, 193 So. 828; Adams v. Saunders, 1939, 139 Fla. 730, 191 So. 312; and Washington Loan & Trust Co. v. Hutchinson, 1932, 107 Fla. 69, 144 So. 343. See also Marquette v. Hathaway, Fla. 1954, 76 So.2d 648.
We therefore uphold and affirm the decree.
Affirmed.
• SHANNON, J., and WARREN, LAMAR, Associate Judge, concur.