| | |
|---|---|
| 100 | 75 |
| 109 | 649 |
| 100 | 75 |
| s58NW | 627 |
| 129 | ¹415 |
| 100 | 75 |
| 158 | ¹254 |

WILLIAM DUNHAM, TRUSTEE, ETC., v. THE W. STEELE PACKING & PROVISION COMPANY, GRAND RAPIDS SAVINGS BANK, NATIONAL CITY BANK OF GRAND RAPIDS, T. STEWART WHITE, FIFTH NATIONAL BANK OF GRAND RAPIDS, CITY NATIONAL BANK OF LANSING, AND FIRST NATIONAL BANK OF TRAVERSE CITY.

*Mortgage— Trust—Preferences—Parol evidence— Set-off— Reformation—Bona fide holder—Expense of protecting property—Lien.*

1. In the absence of any ambiguity in a written instrument, it must be interpreted according to its plain terms, no fraud or mistake being claimed.

2. Where a trust mortgage is conditioned for the payment to the mortgagee, first, of three notes indorsed by the mortgagee and specifically described, and of any renewals or extensions of said notes, and of any other notes upon which the mort-

gagee is indorser, and, second, of three notes, amounting to a stated sum, held by a specified bank, and of a fourth note held by another bank, and of any other liabilities of the mortgagor to the mortgagee, then or thereafter incurred, for the indorsement or otherwise of said mortgagee, the intention to create two classes of creditors, and to prefer those mentioned in the first class, is entirely clear upon the face of the mortgage, and the meaning of the language used cannot be changed by parol evidence.

3. Where the language used in an instrument is of doubtful meaning, evidence of the surrounding circumstances, and of what was said by the parties interested, is competent to determine its real meaning, but the secret intention of either party cannot be shown.

4. The purchaser of a promissory note before due, in good faith, for a full consideration, and in reliance upon the validity of a trust mortgage as it then read, given to secure the payment of said note and of other indebtedness of the mortgagor, with a preference in favor of said note, cannot be deprived of such priority by the reformation of the mortgage so as to eliminate all preferences therefrom.

5. Where the mortgagee in a trust mortgage fails to employ and pay a watchman to care for the trust property, which action is necessary to its protection, and one of the *cestuis que trustent* performs said duty, it is equitable that he should be repaid the sums so expended, and that he should have a prior lien on the trust property therefor.

Appeal from Kent. (Adsit, J.) Argued March 7, 1894. Decided April 10, 1894.

Bill to foreclose a mortgage. Defendants W. Steele Packing & Provision Company and Grand Rapids Savings Bank appeal. Decree modified and affirmed. The facts are stated in the opinion.

*J. Edward Earle,* for complainant.

*George E. Nichols,* for defendant W. Steele Packing & Provision Company.

*Taggart, Wolcott & Ganson,* for defendant Grand Rapids Savings Bank.

*J. W. Champlin,* for defendant City National Bank of Lansing.

*FitzGerald & Barry (Francis A. Stace,* of counsel), for defendant White.

*M. H. Walker,* for defendant Fifth National Bank of Grand Rapids.

*G. A. Wolf,* for defendant First National Bank of Traverse City.

GRANT, J.   The defendant the W. Steele Packing & Provision Company, being indebted in large amounts, and in fact insolvent, on August 28, 1889, executed to the complainant, as trustee, a mortgage upon certain real estate, and this bill is filed to foreclose said mortgage.

The clause of the mortgage over which the principal contention arises is as follows:

" Provided always, and these presents are upon this express condition, that if the said party of the first part shall and do well and truly pay, or cause to be paid, to the said party of the second part:

" *First.* Notes of said first party, indorsed by said William Dunham, as follows: Note for $5,000, due August 30, 1889, held by the Fourth National Bank of Grand Rapids, Mich.; note for $5,000, due September 23, 1889, held by the Northern National Bank of Big Rapids, Mich.; note for $3,000, due November 12, 1889, and held by First National Bank of Grand Traverse, Mich.,—and any renewals or extensions of said notes, and any other notes upon which said Wm. Dunham is indorser.

" *Secondly.* Three notes of said first party, amounting in all to the sum of $16,000, and held by the Grand Rapids Savings Bank of Grand Rapids, Mich.; note due October 25, 1889, for $5,000, held by the National City Bank of Grand Rapids, Mich.; and any other liabilities of said first party to said second party, now or hereafter incurred, for the indorsement or otherwise of said second party."

The note for $5,000 held by the Fourth National Bank

of Grand Rapids, and mentioned in the first clause above' quoted, was renewed from time to time, and finally passed into the hands of the defendant the City National Bank of Lansing, which is a *bona fide* holder, for a valuable consideration. The other note for $5,000, held by the Northern National Bank of Big Rapids, in like manner passed to the defendant T. Stewart White. The defendant the First National Bank of Traverse City continued to hold and own the $3,000 note.

The principal question is whether the mortgage created two classes of creditors, the first of which was preferred. It is insisted on the part of defendants the W. Steele Packing & Provision Company and the Grand Rapids Savings Bank that it did not, and that all the creditors secured by the mortgage should share equally in the distribution of the amount realized upon the foreclosure sale, the property being insufficient to pay all the debts. The court below held that the creditors mentioned in the first class were preferred, and decreed that they be paid first out of the amount realized, and the balance, if any, be distributed among those of the second class. From this decree the packing company and the savings bank alone appeal.

The decree is unquestionably correct. The language itself excludes any other conclusion. The intention to prefer is entirely clear upon the face of the instrument. No fraud or mistake is set up or claimed. Therefore, in the absence of any ambiguity, the instrument must be interpreted according to its plain terms.

But, if we look to surrounding circumstances, we find evidence to corroborate this construction. At the same time of the execution of this mortgage, the packing company executed a chattel mortgage to secure the debt of the Fifth National Bank of Grand Rapids, amounting to about $10,000, and also certain other indebtedness. Dunham, who was then responsible, had indorsed to large

amounts for both Mr. Steele and the packing company, and without any consideration. It was natural that he should desire to first secure Mr. Dunham, and his intention to do so is manifest from the record.

The further claim on the part of the packing company and the savings bank is that the property covered by the chattel mortgage was sufficient security for the debts secured thereby, but that Mr. Dunham, who was also the trustee named in it, has lost, by bad management, a large part thereof, and misappropriated a portion of the funds received from the sale. When this suit was commenced, it was the understanding of all the parties concerned that these creditors were preferred. The answer filed by the savings bank admitted it, and it was not till considerable testimony had been taken that the savings bank filed a petition, and obtained leave to amend its answer, alleging that they were not preferred, and praying that, if the mortgage be held to give such preference, it be reformed so as to give no preference. The defendants appellant introduced evidence which they claim shows that there was no intention on the part of the packing company to prefer any of its creditors in the execution of this mortgage. This testimony comes entirely from the officers of the company and their attorney who drew the mortgages. The attorney drew them in accordance with the instructions received from Mr. Steele, the president of the company, and without any interference or instruction from Mr. Dunham. The testimony of some of these witnesses that they did not intend to make any preferment is incompetent. If the language were of doubtful meaning, evidence of the surrounding circumstances, and what was said by the parties interested, would be competent to determine its real meaning. But even in that case the secret intention of either party would not be admissible.

It is unnecessary, however, for the reason above given, to comment upon this testimony. The language is unmistakable, and its meaning cannot be changed by parol evidence. Even if a case were made for reformation of the mortgage, this could not be done against the interest of the City National Bank of Lansing, because it purchased the note before due, in good faith, for a full consideration, and in reliance upon the validity of the mortgage as it read. By no principle of equity, therefore, can its priority be taken away.

Complainant, Dunham, as indorser, paid the note now held by defendant White after it became due, and subsequently transferred it to White in part payment of an indebtedness due from him to White. It is claimed that Dunham mismanaged the trust confided to him under the chattel mortgage, by which the savings bank and the packing company suffered loss, and that White therefore took this mortgage subject to all the equities existing between Dunham and the parties interested in the chattel mortgage; that Dunham should be compelled to an accounting under that trust, and if he mismanaged the affairs of the packing company under that mortgage, by which loss resulted, such loss should be set off against the claim of White. We think it very doubtful if the testimony makes out a case of mismanagement; but this we need not determine. The offset claimed did not grow out of any relation between Dunham and White, or between White and the defendants appellant. This note was not secured by the chattel mortgage. Dunham's right to transfer it is undoubted, and its transfer carried with it to the transferee the security of the real-estate mortgage. A set-off growing out of a tort, on another transaction between Dunham and his *cestuis que trustent* under the chattel mort-

gage, cannot be enforced against White's claim and lien under the real-estate mortgage.

It appears that $1,207.31 had been paid upon the note held by the First National Bank of Traverse City. This amount was paid by complainant out of the proceeds of the personal property conveyed by the chattel mortgage. The Fifth National Bank claimed that the Traverse City Bank had no right to retain this money. The court therefore decreed that, out of the proceeds of the sale under the real-estate mortgage, complainant pay into the registry of the court this amount, with interest from the dates when the payments were made; and that said Fifth National Bank, within 30 days, institute proceedings for an accounting with the parties interested in relation to such payments; and that, if such proceedings be not begun within that time, said money be paid to the preferred creditors as their several interests should appear. Such proceedings were instituted within the prescribed time, and are now pending. We are unable to see how the rights of the savings bank are prejudiced by this portion of the decree. The court, under such an accounting, will determine who is entitled to the fund, and decree its payment accordingly. This action of the court will secure the disposition of that money in accordance with the terms of the chattel mortgage.

The defendant savings bank paid out certain sums for a watchman to take care of the property after it ceased to do business. It was essential that this should be done, and, if the trustee failed to do it, it was certainly proper for one of the *cestuis que trustent* to do it to protect the property, not only for its own interests, but for the interest of all. It is certainly equitable that these sums should be repaid, and that the savings bank should have a prior lien therefor. It will be decreed accordingly.

Except as above modified, the decree will be affirmed, with the costs of this Court. The costs in the court below will be paid out of the fund.

The other Justices concurred.