HOLMES *v.* HOLMES.

1. REFORMATION OF INSTRUMENTS—SUFFICIENCY OF EVIDENCE.
   Reformation of an instrument, equitable in its terms, must be based on something more than a silent acquiescence in the things done thereunder.

2. UNDUE INFLUENCE—EVIDENCE.
   Undue influence in procuring an assignment of property rights cannot be inferred solely from the advanced age of the assignor.

3. MORTGAGES—CONSTRUCTION—ASSIGNMENT.
   A widow transferred all of her interest in her husband's estate to their four children, taking a mortgage from each for $5,000, with interest annually at 7 per cent., payable subject to her order, the mortgage to become void at her death. On the death of one of the sons intestate, she assigned the mortgage given by him to his children by his first wife, for the purpose of "evening up" between the two sets of children, and they brought suit to foreclose. *Held*, that the mortgagee was entitled to so much of the accumulated interest as she might see fit to demand from time to time, and that such right was assignable.

4. SAME—PAROL EVIDENCE.
   The plain terms of the mortgage could not be varied by proof that, at the time of its execution, there was an oral understanding that each of the mortgagors should pay an equal share of any money asked for by their mother, which should constitute full satisfaction of the mortgages to that time.

5. SAME—GIFT OF INTEREST—RECEIPT.
   The acceptance by the mortgagee, annually, of a sum less than the interest due, and the giving of a receipt therefor, stating that it was the interest on the mortgage for that year, showed an intention to give the balance of the interest then due to the mortgagor, and amounted to a valid gift.

6. SAME—TENANCY IN COMMON.
   The fact that the assignees of the mortgage were tenants in common with the other heirs of the mortgagor in the mortgaged property did not invalidate the gift of the mortgage, or prevent the enforcement thereof by such assignees.

Appeal from Branch; Yaple, J. Submitted January 8, 1902. Decided February 11, 1902.

Bill by Nathaniel L. Holmes and Mary L. Galloway against Sarah E. Holmes and others to foreclose a mortgage. From a decree for complainants, defendants appeal. Modified and affirmed.

*John B. Shipman* and *H. H. Barlow*, for complainants.

*Stewart & Bliss* and *Dallas Boudeman*, for defendants.

MONTGOMERY, J. Complainants' grandfather died intestate, owning personal property valued at upwards of $168,000, and real estate valued at $25,000, leaving a widow, Mary Holmes, 77 years old, and four children. Upon a settlement of the estate, Mary Holmes transferred to the children all her interest, both real and personal, in the estate of her husband, and took in return four mortgages, one from each of the children, each "to secure the payment of the sum of five thousand dollars,  *  *  * the receipt whereof is hereby confessed and acknowledged, in manner following, to wit: Interest annually at seven per cent., payable subject to the order of Mary Holmes. This mortgage to become null and void at the decease of the said Mary Holmes."

Defendants contend that there was an oral understanding when these mortgages were made that the mortgagors should each pay an equal share of any money asked for by their mother under the mortgages. Defendant Sarah E. Holmes, complainants' stepmother, is the only witness whose testimony tends to show such an arrangement, assented to by Mary Holmes; and she does not testify that Mary Holmes expressly assented to it, but says:

"She was present whenever the thing was talked over, and she seemed willing, but I don't remember any particular conversation they ever had in which she joined.

" *Q.* Or said anything about it at all?

"*A.* No, sir; but she acknowledged, of course, that she did it of her own free act, when she signed her rights away."

Each of the children paid their mother $26 a year on these mortgages. One receipt was introduced in evidence, running to John T. Holmes, complainants' father, stating the amount paid, and describing it as "interest on his mortgage for 1895." This receipt, it was testified, resembled in form other receipts, which had been lost or destroyed. After the death of John T. Holmes, intestate, Mary Holmes assigned the mortgage given by him, for the foreclosure of which this suit is brought, to complainants, his children by his first wife, evidently, as the testimony indicates, for the purpose of "evening up" between the two sets of children. The assignment is of the obligation mentioned in the mortgage, "and the moneys now due, and the interest that may hereafter grow due, thereon." At the same time Mrs. Holmes receipted for interest to that date upon the three other mortgages. The indorsements, as well as the assignment, were without consideration. Defendants contend that the receipt introduced in evidence, together with the surrounding circumstances, including the receipting for accrued interest upon the other mortgages, and the parol testimony, shows a gift to John T. Holmes of the unpaid interest on this mortgage up to January 1, 1899. Defendants further contend that the assignment was the result of undue influence, and that complainants, being tenants in common with defendants, could not acquire by gift an outstanding incumbrance, and hold it adversely to defendants.

1. The most liberal construction possible of this mortgage, in favor of the mortgagor, is that the mortgagee should have, during her life, as much of the accumulated interest as she desired. It follows that, at the time of the assignment, she was entitled to demand the accumulated interest, unless she had given it, or a part of it, to her son; and it follows from this that, if she chose, she might sell or give away her interest, instead of foreclosing. Such an

oral understanding as defendants sought to show was at variance with the terms of the mortgages, which each gave the mortgagee the right to demand the interest to date at any time. Certainly, where the consideration for the mortgage, as it read, was, as in this case, much more than adequate, and where the mortgagee is not shown to have understood that anything else was intended, except by silent acquiescence in the things done, a case is not made for such a reformation of the mortgage as will make it more unfavorable to the mortgagee than it is by its terms. That being so, its plain terms cannot be varied by parol. See *Dunham* v. *Provision Co.*, 100 Mich. 79, 80 (58 N. W.. 627); *Phelps* v. *Abbott*, 114 Mich. 88 (72 N. W. 3).

2. The evidence satisfies us that, during the lifetime of John T. Holmes, payments were made to Mary Holmes annually, and receipts were given each year, signed by Mary Holmes; and these receipts were, in form, similar to the following:

"$26.                            BRONSON, April, 1896.
" Received of John T. Holmes twenty-six dollars, interest on his mortgage for 1895.
                                    "MARY HOLMES."

The question presented is whether this amounted to a gift of all interest above the amount received from year to year. We are disposed to think that such was the intention, and that the instrument should be so construed. That such a receipt, showing the intention to accept a less sum in payment of the interest, would amount to a valid gift, is settled by *Green* v. *Langdon*, 28 Mich. 221. We think, therefore, that as to the interest accruing during the lifetime of John T. Holmes, and covered by the payments made by him upon receipts in the form above quoted, the mortgage is to be deemed satisfied.

3. We are not able to find in the record any evidence of undue influence. There is nothing, other than the age of Mary Holmes, to indicate that she is susceptible to undue influence. The provision which she sought to make for complainants was not unreasonable. The purpose evi-

dently was, as before stated, to even up between the children of John T. Holmes by his first marriage and the children of the second marriage.

4. It is contended, however, that the complainants could not take title to this mortgage as against their co-tenants, the defendants. In this connection it is contended that the evidence shows that the mortgage was purchased. This contention ignores the essence of the transaction. It was undoubtedly, in substance, a gift. The nominal consideration of $1 did not change its character. The question presented here, then, is whether a gift may be made to one tenant in common of an incumbrance upon the common property. It is stated as a general rule that, if tenants in common become purchasers of an outstanding title or incumbrance, the benefit of such purchase is to be shared with their co-tenants. Whether this rule applies to the purchase of an incumbrance has been questioned in one instance. See *Blodgett* v. *Hildreth*, 8 Allen, 186. But the great weight of authority undoubtedly applies the rule to·incumbrances as well as to adverse titles. But as is well stated in Freem. Co-Ten. § 155:

"As the rule forbidding the acquisition of adverse titles by a co-tenant from being asserted against his companions is always said to be based upon considerations of mutual trust and confidence supposed to be existing between the parties, the question naturally arises whether the rule is applicable where the reasons on which it is based are absent."

We have been unable to find an authority directly in point upon this question, but we deem it a case for the application of the doctrine that, where the reason for the rule fails, the rule fails. No hardship is worked to these defendants by the transfer of this mortgage from the mortgagee to the complainants; and there is no justice in saying that these complainants, the natural objects of the mortgagee's bounty, should, of all the world, be excluded from accepting it.

We think justice will be done in this case if we decree that the defendants, who are co-tenants, may discharge

the lien as to their interest by contributing their propor-
tion of the amount remaining due upon this mortgage, and
upon their failure to do so the property be sold to satisfy
such amount.    The decree of the circuit court, as so mod-
ified, will be affirmed.    The defendants will recover costs
of this court.

HOOKER, C. J., MOORE and GRANT, JJ., concurred.
LONG, J., did not sit.