EDITH E. HELD, Individually and as Administratrix of the Estate of Vincent H. Waggoner, deceased; MABEL WAGGONER ROSENTHAL, *et al.,* v. FLORIDA CONFERENCE ASSOCIATION OF SEVENTH DAY ADVENTISTS; MABEL WAGGONER, a Widow, *et al.*

193 So. 828
Opinion Filed January 23, 1940
Rehearing Denied February 23, 1940

*Earnest & Lewis,* for Appellants;

*Metcalf & Finch,* for Appellee Mabel Waggoner; and *Boozer & Boozer,* for other Appellees.

Per Curiam.—The facts of this case are sufficiently stated in the opinion prepared by Mr. Justice Buford.

The final decree contains the following:

"This cause was duly presented for final hearing, upon the pleadings and the proof. At the final hearing plaintiff gave notice of an application for leave to file an amended bill, which was filed a few days thereafter. The amended bill substantially presents the same case as the original bill, although certain allegations of the amended bill, as to which there was an obvious deficiency of proof, have been omitted from the amended bill. The matter has been duly considered by the court.

"A careful consideration of this record, viewed in the light of conditions surrounding the deceased in his lifetime, may indicate that he was what some people call a religious fanatic. However, his peculiarities and conduct fail to disclose a state of mind which would indicate that, in contemplation of the law, he was insane, or that he was subject to any undue influence—or unfair persuasion at the time of the execution of the deed to the defendant church. It is true that a presumption may arise concerning a conveyance of this sort to a religious organization, but the whole record

fails to show any lack of a sufficient intelligence on the part of the deceased, not only to grasp his business affairs, but to understand and appreciate the significance of his action, and those whom he cared to have the property, either by gift or as the result of some business transaction. * * *

"With reference to an accounting, and to the partial or total invalidity of the purported will of July 29, 1935, it seems that those matters can be fully handled in the county judges court, which has ample jurisdiction to determine them. That court first assumed jurisdiction over the Estate. There is no reason why this court, at this time, should endeavor to deprive that court of a proper exercise of its jurisdiction.

"THEREFORE, it is ORDERED AND ADJUDGED that leave be granted to plaintiffs to file the amended bill; that the amended bill be dismissed, with prejudice, as to all matters except those pertaining to an accounting and the material or total invalidity of the purported will of July 29, 1935, and, as to those matters, the amended bill be dismissed, without prejudice, with costs in the amount of $............, including compensation of the Special Master in the amount of $25.00, taxed against the plaintiffs, for which let execution issue.

"DONE AND ORDERED, in Chambers, at West Palm Beach, Florida, this 24 day of June, A. D. 1938.

"C. E. CHILLINGWORTH, Circuit Judge."

There is ample evidence to sustain the findings of the chancellor in effect that the deed of conveyance of land referred to in the record was not made because of undue influence upon the grantor, and the final decree should be and is affirmed.

TERRELL, C. J., WHITFIELD, BROWN, CHAPMAN and THOMAS, J. J., concur.

BUFORD, J., dissents.

BUFORD, J. (dissenting.)—On appeal we review final decree dismissing amended bill of complaint.

The decree was entered on amended bill of complaint, answer thereto, and testimony taken on the issues.

The amended bill of complaint alleged in effect that during his lifetime Vincent H. Waggoner, who will hereafter be referred to as the donor, was seized and possessed of certain real estate described as, "Southwest Quarter (SW¼) of Sec. 10, Twp. 43 S., R. 36 E."

Paragraph 2 of the amended bill of complaint alleges: "Your orators further represent that on or about the 21st day of February, A. D. 1934, less than eighteen months before his death, Vincent H. Waggoner sometimes known as Vincent Howard Waggoner, purported to execute a warranty deed to the defendant Florida Conference Association of Seventh Day Adventists, conveying the aforesaid parcel of land to it as grantee therein, but that such warranty deed was not executed in the presence of two witnesses as it purports to have been attested; that said deed was without consideration and said deed was not delivered to the grantee during the lifetime of Vincent H. Waggoner, but on the contrary, was delivered to the grantee subsequent to his death, and thereafter, on the 29th day of August, A. D. 1935, said warranty deed was filed for record in the office of the Clerk of the Circuit Court in and for Palm Beach County, State of Florida, and was recorded in Deed Book 516, at page 385. Copy of said warranty deed being attached and marked Exhibit 'A,' to the original bill herein."

Paragraph 4 of the bill alleges:

"Your orators further aver that Vincent H. Waggoner

died on or about the 5th day of August, A. D. 1935; that up until about ten years before that he was not a man of any religious inclinations whatsoever; that along about the year A. D. 1925 he was persuaded to become a member of the Seventh Day Adventist Church, embrace its faith and to adhere to its dogma and precepts; that during the period of a few years preceding his death he began to deteriorate in health, became senile, and he became obsessed with religious ideas more and more, finally becoming a religious fanatic, suffering from religious delusions to such an extent that he was under the domination and influence of the Seventh Day Adventist Church, its clergy, representatives and agents and particularly under the domination of the grantee in the warranty deed aforesaid; that the grantee is, as its name implies, an association of the Seventh Day Adventist churches in the State of Florida; that notwithstanding the fact that said parcel of land comprised almost the sole wealth of Vincent H. Waggoner; that it comprised his home; that his children were all poor and had a claim upon his bounty; that his relations with them in the past had been cordial and that they had assisted in the acquisition of the said land, yet, nevertheless, being under the domination of the Seventh Day Adventist Church, as aforesaid, he was persuaded by such grantee to give the same to it without consideration and, to effectuate the gift, he purported to execute the said warranty deed on the 21st day of February, A. D. 1934, but, nevertheless, retained possession of said land and collected the income, rents and profits therefrom until the time of his death; that along about the time of this pretended gift he had been suffering from ill health; that he was, and had been, undergoing observation and treatment at the Seventh Day Adventist Hospital in Orlando, Florida; that he was an inmate of said institution

and continued to be for several weeks thereafter; that at the time of the purported execution of said deed a major surgical operation on Vincent H. Waggoner was imminent, which was thereafter performed during said period of his treatment at said hospital; and that the relationship of the deceased Waggoner and the church, his religious fanaticism and delusions, together with the domination and undue influence of the church over him, continued until the time of his death."

Paragraph 5 alleges:

"Your orators further aver that after the death of Vincent H. Waggoner, the grantee in said deed entered into possession of said land and that the defendants, Roy F. Hudson and Andrew F. Trivett are each tenants of the Florida Conference Association of Seventh Day Adventists, having possession of the same or some portion or parcel thereof, said tenants having paid and obligated themselves to pay rent to their landlord."

The bill then alleges facts showing that the complainant is the duly qualified and acting administratrix of the estate of the donor.

Paragraph 8 of the bill alleges:

"Your orators further aver that on or about the 29th day of July, A. D. 1935, and while the defendant grantee continued to exert its undue influence over the deceased Waggoner, and while he continued under its domination and knowing that death was imminent, he, the said Vincent H. Waggoner, executed a purported will in which the Florida Conference Association of Seventh Day Adventists was made the principal devisee of the remaining property of Vincent H. Waggoner, and again on the 31st day of July, A. D. 1935, Vincent H. Waggoner purported to execute a codicil thereto in which said will and codicil W. E.

Abernathy, an officer or agent of the Florida Conference of Seventh Day Adventists, was named as sole executor to serve without bond. A copy of said purported will and codicil being attached to the original bill of complaint herein and marked Exhibit 'B'; that at the time of the execution of the said purported will, Vincent H. Waggoner was ill and confined to a Seventh Day Adventist hospital in Takoma Park, Maryland; that the same was drafted by the Secretary for the General Legal Counsel of Seventh Day Adventist Churches in the United States; that all of the witnesses to said will and codicil were nurses, or other employees of said hospital; that he never recovered from said illness and died within a few days after the purported execution of said will and codicil in said hospital on, to-wit, the 5th day of August, A. D. 1935; that said purported will and codicil have never been offered for probate and the executor, as well as the other parties interested therein, have failed and declined so to do."

Paragraph 10 alleges:

"Your orators further aver that Vincent H. Waggoner, during his lifetime, owned or was vested with some substantial right, title or interest in and to approximately 119 acres of land which lies adacent to and partly surrounds the parcel of land described in paragraph 1 hereof, which land was acquired from the Trustees of the Internal Improvement Fund of the State of Florida and is located in Section 9, 10, 15, and 16, in Township 43 South of Range 36 East; that by the fourth paragraph of said purported will he attempted to devise the same to said Florida Conference Association of Seventh Day Adventists, but said devise is invalid under Section 20 of the Probate Act because said purported will was executed less than six months prior to the date of the death of the testator; that even though said

will has never been offered nor admitted to probate, as aforesaid, yet, nevertheless, it constitutes a cloud upon the title to the real estate purported to be devised."

Other allegations of the amended Bill of Complaint are immaterial.

The prayer of the bill is:

"WHEREFORE, the plaintiffs pray that the purported warranty deed heretofore described, be cancelled and declared null and void; that the purported will and codicil heretofore described be cancelled and declared null and void and of no effect, or that the fourth provision of said purported will, devising 119 acres of land to the defendant Florida Conference Association of Seventh Day Adventists, be cancelled and declared invalid; that an accounting be had and taken between the parties, requiring the defendants to account for the rents, income and profits derived from real estate heretofore described; and also requiring the defendant Mabel Waggoner to account for the personal property heretofore described, and a decree for the amount so found to be due and for such further and other relief as equity may require and to your Honors shall seem meet."

While the will has not been probated, the record shows that it has been filed in the office of the County Judge of Palm Beach County. The record also shows that the will, insofar as it purports or pretends to devise anything to any benevolent, charitable, literary, scientific, religious, or missionary institution, corporation or association or purpose, is null and void and under the provision of Section 20 of the 1933 Probate Act of Florida. Therefore, the provision of the will, "FOURTH: I give, devise and bequeath to the Florida Conference Association of Seventh-Day Adventists, Inc., one hundred and nineteen (119) acres of land lying

adjacent to the one hundred and sixty (160) acres, which 160 acres were covered by deed dated March, 1934, and conveyed to said Florida Conference of Seventh-Day Adventists. It is my will and desire that my wife, Mabel Waggoner, receive during her lifetime one and one-fourth (1¼) per cent interest on proceeds derived from the sale of the property already given by me to the Florida Conference of Seventh-Day Adventists covered by contract Agreement held by said Florida Conference of Seventh Day Adventists. Also on proceeds from sale of said 119 acres hereby bequeathed to said Florida Conference of Seventh-day Adventists."—while ineffective to pass title, is sufficient to cast some cloud on the complainant's title and, therefore, the complainant had the legal right to invoke the jurisdiction of the court of chancery to adjudicate such provision of the will null and void.

The record shows that the warranty deed referred to in the Amended Bill of Complaint was executed under the circumstances alleged in the bill. The record also shows that at the time of the execution of the deed the donor was under the influence and domination of the donee and that the deed was made without consideration.

The record shows that the deed was made while the donor was an inmate of the Seventh Day Adventists Hospital in Orlando, Florida, and at the time when a major surgical operation had been advised and which operation was performed a few days after the execution of the deed.

The record shows that the donor partly recovered from this operation, and, thereafter, continued to live on the property conveyed and to collect rents, incomes and profits therefrom.

The record shows that while the donor had not been a religious man prior to 1925, at about that time he became

converted to the faith of the Seventh Day Adventists and from then on became more and more devoted to that faith until he became obsessed with the belief that it was the one and only true Christian religion and that those who held any other religious faith were not Christians. He sought to convert practically all people with whom he came in contact to the faith of his church. He placed full and complete confidence in the Seventh Day Adventist Church and its officers. He consulted the officers of the church and especially the officers and managers of Florida Conference Association of Seventh Day Adventists, which was the chief administrative department of the church in Florida, about all of his affairs and was guided in his affairs of life by their counsel and advice. It would be hard to imagine a condition under which an otherwise sane and normal man could be more completely under the domination and influence of others than was the donor in this case under the influence and domination of the donee.

The deed was made under conditions and surroundings under which the donor would be most likely to be unduly influenced in favor of the donee. The exercise of undue influence does not necessarily mean the exercise of a wrong, a fraudulent, or even an immoral or unrighteous influence. It is that sort of an influence which when exercised even with the best of intentions by one occupying a confidential relation with the person influenced causes such person so influenced to do a thing which inures to the material benefit of the confidant exercising the influence, which thing so inuring the donee the person so influenced would not have otherwise been likely to do. The rule of law applicable to the validity of donations, gifts or devises made under such conditions is a wise and salutory one because any other would work to the advantage of unscrupluous and

designing persons who would take advantage of the confidence of trusting and unwary people whose confidence they might be able to inspire and profit by.

The rule is stated in 6 R. C. L. 637 as follows:

"Assent obtained through undue influence may invalidate a contract. What constitutes undue influence is a question depending upon the circumstances of each particular case. It is a species of constructive fraud, which the courts will not undertake to define, by any fixed principles, lest the very definition itself should furnish a fingerboard pointing out the path by which it may be evaded. Whenever the relations between the parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that unfair advantage in a transaction is rendered probable either because of superior knowledge of the matter derived from a fiduciary relation or from overmastering influence on the one side, or from weakness, dependence or trust justifiably reposed on the other side, the presumption is that the transaction is void, and it is incumbent on the stronger party to show affirmatively that no deception was practiced or undue influence used and that everything was fair, open, voluntary and well understood.

In order to render this rule applicable it is not necessary that one of the parties should occupy such a dominant position towards the other as to justify the interference that the latter was without power to assert his will in opposition to the former. Nor is the rule confined to cases in which the relation between the parties is of a strictly fiduciary nature. It applies whenever a confidential relation exists as a fact, or dominion may be exercised by one of the parties over the other. For instance, a relation of peculiar trust and confidence exists between a spiritualistic medium and a believer in his alleged powers, which raises

the presumption that an advantage obtained by the former over the latter resulted from undue influence. Therefore, the burden of proof rests upon one claiming to be a spiritualistic medium, to show that a contract made by him with one having implicit belief in the existence of the powers claimed by such medium was free from undue influence. The same rule applies to a contract between a physician and his patient. The fact that such a contract is presumptively invalid is available as a defense in an action at law. But to render such a transaction valid it is necessary to show only that the other party had competent and disinterested advice, or that he performed the act or entered into the transaction voluntarily, deliberately and advisedly, knowing its nature and effect, and that his consent was not obtained by reason of the power and influence to which the relation might be supposed to give rise. The mental weakness of one of the parties is an important element in raising a presumption of undue influence or in determining its existence. It is undoubtedly the law that when by physical or mental superiority, one obtains an advantage in a transaction over another who is enfeebled in mind and body, or by disease or old age, the person obtaining such advantage will be required to show that the transaction was a fair one.

"But such a rule can apply only to one who was present and actively concerned in bringing about the result complained of. Nor will undue influence exercised upon a person in procuring an assignment of property rights be inferred solely from the advanced age of the assignor. Stronger proof is, and manifestly should be, required to raise a presumption of undue influence in the case of a will than of a deed or contract, for the former, unlike the latter, can never take effect until the giver is dead, and therefore

in a condition utterly incapacitating his further enjoyment or use of the subject of his testamentary disposition."

See also Newman v. Smith, 77 Fla. 633, 667, 680, 82 Sou. 236, 251; Hamilton v. Morgan, 93 Fla. 311, 112 Sou. 80; Goodbar v. Lidikey, 136 Ind. 1, 35 N. E. 691, 43 A. S. R. 296; Holmes v. Holmes, 129 Mich. 412, 89 N. W. 47.

In Section 497 Restatement of the Law, Contracts, it is said:

*"Where one party is under the domination of another, or by virtue of the relation between them is justified in assuming that the other party will not act in a manner inconsistent with his welfare, a transaction induced by unfair persuasion of the latter, is induced by undue influence and is voidable.* Comment:

"a. The protection given parties of the class included under the rule stated in this Section is broader than that given where parties bear no such relation to one another. Duress between such parties has the same effect as between other parties, but unfair persuasion without fear is enough to constitute undue influence within the rule stated in the Section. The relationships that ordinarily fall within the rule are those of parent and child, guardian and ward, husband and wife, physician and patient, attorney and client, clergyman and parishioner. In each of these cases, however, it is a question of fact whether the relationship in a particular case is such as to give one party dominance over the other, or put him in a position where words of persuasion have undue weight; and even though none of the relations enumerated above exist, if the relationship in fact was such that there was dominance or justifiable trust and confidence, the result is the same as if it were based on one of the relationships enumerated above.

"b. Inadequacy of consideration or any other disad-

vantageous feature in an agreement is important as evidence in connection with other circumstances showing unfair persuasion, but is not in itself enough to establish undue influence. Good faith of the persuader does not preclude the possibility of undue influence, but bad faith strongly tends to show it.

"c. The degree of persuasion that is unfair depends on a variety of circumstances. The ultimate question is not merely whether the persuasion induced the transaction, for such persuasion is often permissible, but whether the result was produced on the one hand by influencing a freely exercised and competent judgment or on the other by dominating the mind or emotions. The weakness or dependence of the person persuaded is a strong circumstance tending to show persuasion may have been unfair."

In Section 498 of the same work it is said:

"Where a beneficiary enters into a transaction with his fiduciary relating to matters within the scope of the fiduciary relation, the transaction is voidable, unless

"(a) It is fair and reasonable, and

"(b) is assented to by all parties beneficially interested, with knowledge of their legal rights and of all relevant facts that the fiduciary knows or should know, and

"(c) these parties are of competent age and understanding and are not subject to undue influence."

In Rich v. Hallman, 106 Fla. 348, 143 Sou. 292, this Court, speaking through Mr. Justice TERRELL, said:

"In view of the age and infirmity of the donor, the confidential relation existing between the donor and the donee the influence shown to have been exerted over the donor by the friends of the donee and by the donee herself and in view of other facts and circumstances peculiar to this case, we feel impelled to hold that the duty was on the donee to

show that the assignment of the note and mortgage brought in question was bona fide and that it was not secured by undue influence, deceit or other improper means. Peacock v. DeBois, 90 Fla. 172, 105 So. 32; Nelson v. Brown, 164 Ala. 397, 51 So. 360; Haslinger v. Gabel, 344 Ill. 354, 176 N. E. 340; Allore v. Jewell, 94 U. S. 506-513, 24 L. Ed. 260, pages 263-264, 12 R. C. L. 972; Black on Rescission and Cancellation, Sections 249 and 253.

"All these authorities support the general rule founded on public policy that where a mutual confidential relation exists and a gift is made to one in whom the confidence is reposed it is *prima facie* void because of such relation. The law presumes in other words, when such relation exists that the gift was obtained by undue influence or other improper means. When persons occupy positions of trust and confidence as did the parties to this cause, they are held to a strict measure of candor in their dealings and any transactions between them predicated on a grossly inadequate consideration will be viewed as suspicious. Equity raises a presumption against the validity of such dealings and imposes on the vendee or the donee the burden of showing the good faith and voluntary conduct of the donor or the vendor as the case may be. 12 R. C. L. 972 and cases cited."

My conclusion is that the chancellor failed to apply the rule of law herein above set forth to the record in this case in this, that under the conditions shown to exist even though the donor may have been of sound mind as to all things except his religious convictions, the record shows a fiduciary relation existing between the donor and the donee which, when shown to exist, cast the burden upon the donee to show that the deed was not the result of undue influence.

For the reasons stated, I think the decree should be reversed and the cause remanded for further proceedings.

## On Petition for Rehearing

Per Curiam.—In affirming the decree appealed from in this case the Court did not overlook but had in mind the recent decision in Adams v. Saunders, 139 Fla. 730, 191 So. 312. The decree in this case is in accord with the principles announced in the opinion of Mr. Justice Brown in the Adams case as to presumptions and burden of proof where a fiduciary or confidential relation exists between donor and donee of property. See 191 So. 312, headnotes 7 and 8, and opinion on pages 316 and 317.

The principles stated in the Adams v. Saunders case, do not require a gift to be adjudged void when the evidence discloses the transaction and the entire record in the case sustains a finding that the donor was competent and a holding that there was no undue influence in the making of the donation of the property not forbidden by law, where there was no harmful error in excluding or admitting evidence on the issues as made.

In this case the evidence sustains the finding of the chancellor as to the competency of the donor at the time the deed was executed, and the donor being competent, the evidence of the donation transaction sustains a holding here that the execution of the deed donating land is shown to be the donors uninfluenced will and purpose.

Rehearing denied.

Terrell, C. J., Whitfield, Brown, Chapman and Thomas, J. J., concur.

Buford, J., dissents.