Estate of Carrie H. Cowan, Deceased, William A. Cowan and Waterloo Savings Bank, Executors v. Commissioner.
Estate of Cowan v. Commissioner
Docket No. 3177-62.
United States Tax Court
T.C. Memo 1965-113; 1965 Tax Ct. Memo LEXIS 218; 24 T.C.M. (CCH) 595; T.C.M. (RIA) 65113; April 26, 1965
*218 Held, that the decedent, Carrie H. Cowan, forgave an indebtedness of her son prior to her death; and that such forgiveness constituted a gift. Held, further, that said indebtedness was not forgiven in contemplation of death within the meaning of section 2035(a) of the Internal Revenue Code of 1954. Craig H. Mosier, National Bldg., Waterloo, Iowa, and David J. Dutton, for the petitioner. Donald W. Wolf, for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: Respondent determined *219 a deficiency in estate tax against the Estate of Carrie H. Cowan, in the amount of $13,345.14. The issues for decision are: (1) Whether a $70,000 indebtedness to the decedent by her son that arose from his purchase of her interest in a business, was forgiven by the decedent prior to her death, so that if it was not a transfer in contemplation of death it is not includable as an asset of her estate. (2) If the indebtedness was forgiven by the decedent, whether the same was forgiven in contemplation of death within the meaning of section 2035(a) of the Internal Revenue Code of 1954. Issue 1 - Findings of Fact Some of the facts were stipulated. The stipulation of facts and all exhibits identified therein are incorporated herein by reference. Carrie H. Cowan (hereinafter called "Carrie") died testate on June 14, 1959, a resident of Waterloo, Black Hawk County, Iowa. Her will was admitted to probate; and her son William A. Cowan and the Waterloo Savings Bank were appointed and qualified as the executors of her estate. Both have continued to act in such capacity at all times since their appointment. They filed a Federal estate tax return for Carrie's *220 estate with the district director of internal revenue for the district of Iowa. Carrie was the widow of William E. Cowan, [1] who had predeceased her on May 9, 1956. Cowan, Sr. at the time of his death was the owner of a wholesale lumber business, founded in 1920, which he operated as a sole proprietorship under the name of Cowan and Cowan Wholesale Lumber Company. Cowan, Jr., who was the only son of Carrie and Cowan, Sr., began working for his father in said business in about 1945; he thereafter became the sales manager; and during the last 18 months of his father's life he was for all practical purposes the responsible executive head of the business. Cowan, Sr. left a will, under which he gave one-half of his estate outright to his wife, Carrie; and one-half in trust for the benefit of Carrie for life, with the remainder to go to his four children, Cowan, Jr. and three daughters. The trustees of the trust were Carrie and Cowan, Jr. The will contained the following provisions relating to his said proprietorship business: E. I further will and provide *221 that the wholesale lumber business that I own is to be continued and operated for a period of at least ten years from the date of my death, and I direct that William A. Cowan [i.e., Cowan, Jr.] shall be the manager of said business and shall operate and handle the same for the benefit of my estate, and that he shall be paid for his services as may be agreed upon between the said William A. Cowan, and his Mother, Carrie H. Cowan. F. In connection with the above handling and managing of the wholesale lumber business, I provide that if at any time during the operation thereof that William A. Cowan is willing and able to purchase said business from his Mother or from the other heirs, that they arrange with him on a sale of the business upon reasonable and fair terms and permit him to pay to my estate the payments as provided by the agreement. I further provide that my son, William A. Cowan shall have the first opportunity and right to purchase the wholesale lumber business, and that in such purchase, he shall be given very liberal terms, both as far as the payments are concerned and as to the time that the business is transferred to him so that he shall have a full and fair opportunity *222 to obtain the ownership. In late July or early August 1956, Cowan, Jr. entered into an agreement with his mother and also the executors and testamentary trustees under his father's will, whereby he agreed to purchase the wholesale lumber business for a total price of $150,000, of which one-half was to be paid to his mother and the other half was to be paid to the trust. On August 8, 1956, the Iowa probate court entered an order approving such sale; and thereupon Cowan, Jr. executed two promissory notes to cover said purchase price - one of which he delivered to his mother, and the other of which he delivered to the testamentary trustees. Each note was dated August 8, 1956, and was in the amount of $75,000; each was payable at the rate of $7,500 per year, beginning May 1, 1957; and each was non-interest bearing. Carrie was desirous that her son, Cowan, Jr. have the one-half interest in the business that she had inherited from her husband, without his having to pay her the full $75,000 represented by the promissory note which he had delivered to her personally. She believed that the son's services in the business had contributed materially to its value at the time of her husband's *223 death; and that the son should not have to pay for the fruits of his own work. Accordingly, in order to give effect to her desire, Carrie went to Cowan, Jr.'s office in May 1957, and she there proposed that the son give her a check for $5,000 as full and final payment for her one-half interest in the business, and that she would then forgive the remaining $70,000 balance. Cowan, Jr. accepted his mother's proposal; and thereupon he gave her a $5,000 check which, at her direction, was marked "Final Payment." Also on the same day, Carrie issued a promissory note to Cowan, Jr. in the amount of $70,000, believing that this would make a better record of her gift to the son, and also would enable her daughters to fully understand what she had done. The relationship between Cowan, Jr. and his sisters was not entirely harmonious, due to a feeling of jealousy on the part of the sisters toward their brother. The above-described transaction between Cowan, Jr. and his mother did not in any way affect his $75,000 obligation to the testamentary trustees, which he ultimately paid in full. In December 1957, which was about 7 months after the above-described transaction between Carrie and her son, *224 Carrie had a conference with her attorney on the subject of preparing her last will and testament; and in the course of this conference, she related the details of said transaction with her son. The upshot was that the attorney advised Carrie to write a letter to her son and therein affirm her prior forgiveness of the balance of his indebtedness to her; and such a letter was written and sent to Cowan, Jr. on or about December 20, 1957. Thereafter the attorney drafted the will for Carrie; and upon his recommendation, Carrie included a provision to the effect that she had previously made said $70,000 inter vivos gift to her son, and in which she then stated: "I am now corroborating this gift to him." It was this will which ultimately was admitted to probate as Carrie's last will and testament. In April 1958, Carrie instructed an accountant to prepare a gift tax return for her, in which she would report as a gift to Cowan, Jr. her forgiveness of his $70,000 indebtedness to her. Such return was prepared and filed with the district director at Des Moines in April 1958; and therein the gift to Cowan, Jr., described as "Indebtedness due to the donor," was stated to have been made. In *225 connection with this return, a remittance was made to the district director of gift tax in the amount of $3,930, together with interest and an addition to tax for delinquency totaling $1,218.30. Carrie did not destroy Cowan, Jr.'s note; but placed the same in a safe deposit box which she and Cowan Jr. shared as jointenants. The respondent determined that $75,000 representing the note to Cowan, Jr. to his mother, was includable in her gross estate. Respondent has now conceded, however, that if said note is includable in the estate, it should be included at the lesser amount of $70,000 in order to give effect to the above-mentioned $5,000 payment thereon which Cowan, Jr. had made in May 1957. Issue 1 - Opinion The question for decision on this first issue is: Did Carrie forgive her son's $70,000 debt to her, and thereby make an inter vivos gift of $70,000 to said son? Included among the many types of transactions that constitute gifts are indirect transfers such as the forgiving of a debt. The Gift Tax Regulations state in section 25.2511-1 thereof that the tax applies "whether the *226 gift is direct or indirect. * * * For example, a taxable transfer may be effected by * * * the forgiving of a debt * * *." The elements of an inter vivos gift are set forth in the case of Apt v. Birmingham, (D. Iowa) 89 F. Supp. 361, wherein the court stated: The requirements of a valid gift inter vivos have been considered by a number of courts in cases decided under the Federal Internal Revenue Acts. These requirements may be summarized as follows: (1) a donor competent to make the gift, (2) a donee capable of taking the gift, (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of all present and future title, dominion and control of the subject matter of the gift, (4) the irrevocable transfer of legal title and of the dominion and control of the gift to the donee, (5) a relinquishment by the donor of dominion and control of the subject matter of the gift by delivery from the donor to the donee. * * * [Numerous citations omitted.] Acceptance of the gift by the donee is listed by some courts as an additional requirement for a valid gift. * * * [Citations.] However it has been held that the law presumes *227 the acceptance of a gift beneficial to the donee. * * * Carrie was a competent donor; Cowan, Jr. was a donee capable of taking the gift; and there is no doubt that Carrie intended to forgive the unpaid balance of the debt which her son owed her. The record is replete with evidence of such intent to forgive the debt, including: Carrie's instructions to her son to mark the $5,000 check with the words "Final Payment"; her issuance to the son of her own promisory note in the same amount as the debt that she was forgiving; her letter to the son confirming that she had made the gift to him; her filing of the gift tax return, and her payment of the gift tax on the forgiven indebtedness; and her further confirmation of the gift in her last will and testament. All these add up unmistakably, in our opinion, to the establishment of an intent on Carrier's part to make the gift. Respondent has suggested, and perhaps correctly, that there was another simpler and easier way to forgive the debt (e.g., by destroying the note); but the Carrie's estate should not be penalized merely because she chose another method to accomplish the same result. Our inquiry then is directed to whether Carrie delivered *228 the subject matter of the gift to Cowan, Jr., and whether there was a sufficient act of transfer by Carrie to effectively relinquish her dominion and control of the right to collect the $70,000 from her son. Stated in another way the question for determination is, whether Carrie actually did forgive the debt of her son. Forgiving a debt, as we have hereinabove stated, is an indirect gift; and there can be no manual delivery as there would be in a gift of money or other tangible items. Delivery in the case of a gift of an intangible must necessarily be constructive or symbolical. We believe that the following acts of Carrie - combined and viewed as a whole - were sufficient to effectively forgive the indebtedness of her son: The oral gift of the indebtedness; the letter confirming the gift; the further confirmation of the gift in her last will and testament; the promissory note from Carrie to her son; and perhaps most important, the marking of the son's check at the direction of Carrie, with the words "Final Payment." These words "Final Payment" written on the check are, in our opinion, *229 the equivalent of a receipt; and the use of a receipt has been held to be a valid method of forgiving a debt. In McKenzie v. Harrison, 120 N. Y. 260, 24 N.E. 458, the court held that "A debt may be forgiven and a receipt in full may be evidence of such forgiveness." To the same effect, see Holmes v. Holmes, 129 Mich. 412, 89 N.W. 47. We hold that Carrie intended to, and effectively did, forgive the $70,000 indebtedness of her son. We decide this first issue in favor of the petitioner. Issue 2 - Findings of Fact Carrie was an intelligent and well educated person, who at the time of the 1957 gift here involved was about 73 years of age. She was interested in church activities, traveled considerably, and had a cheerful and uncomplaining disposition. In general, her health was satisfactory, although she did have an arthritic condition known as osteoarthritis, and also a nondisabling heart condition. She took certain medicine for the arthritis, but none for the heart condition. She was informed by her doctor that the heart condition was due to stress and strain, and was not abnormal for a person of her age. She never expressed any fear of death; and *230 she talked and acted as if she expected to live indefinitely. She died of heart failure at about 76 years of age, on June 14, 1959. As hereinbefore found as a fact under Issue 1, Carrie's husband, Cowan, Sr., died in 1956; and in his last will and testament he had expressed a desire that the wholesale lumber business which he had for many years owned and operated as a sole proprietor, should continue to be operated by his only son, Cowan, Jr.; and also that the son should be given an opportunity to purchase the business from his mother and the fiduciaries of his estate, on very liberal terms. Carrie was aware of this desire of Cowan, Sr. And after her son made the arrangement to purchase the business for $150,000, and had delivered one $75,000 promissory note to her and another promissory note of the same amount to the testamentary trustees of Cowan, Sr.'s estate, she began to feel that the amount which the son had undertaken to pay for her one-half interest in the business should be substantially reduced. She felt a moral obligation to make such reduction, for she recognized that the son had significantly contributed to the development and success of the business that he was acquiring. *231 This attitude of Carrie was indicated in her December 1957, letter to her son, wherein she stated: I have never felt that with all you contributed to the business before Dad's death that you should have had to pay more than approximately $75,000.00 or $80,000.00 for the business. * * * The son, as we have heretofore found, was under obligation to pay, in addition to the $75,000 owing to her, the other $75,000 that he had agreed to pay to the testamentary trustees under Cowan, Sr.'s will, which he ultimately did pay in full. It was in these circumstances that Carrie forgave $70,000 of the indebtedness which her son owed to her. Finding of Ultimate Fact Carrie's forgiveness of $70,000 of the indebtedness owing to her by Cowan, Jr. was not made in contemplation of death within the meaning of section 2035(a) of the Internal Revenue Code of 1954. Issue 2 - Opinion The Commissioner, in his statutory notice of deficiency, did not specifically determine that Carrie's forgiveness of the $70,000 obligation of Cowan, Jr. to her was made in contemplation of death. The contention is an alternative one; and the issue embodied therein is one of fact. After *232 considering and weighing all the evidence pertaining to this issue, we have hereinabove found as an ultimate fact, and we here hold, that the forgiveness of said indebtedness was not made in contemplation of death. We are convinced that the motive which impelled Carrie to forgive such indebtedness was one associated with life and not with death. More specifically we are convinced that she was impelled by a moral obligation to give effect to her deceased husband's desire that Cowan, Jr. be permitted to acquire the business on very liberal terms; by her own belief that the price which her son had undertaken to pay for the entire business should be reduced by forgiving most of that portion of the total price which he had obligated himself to pay to her personally; and by her desire to relive the financial pressure on her son, at the time when he was taking over the business which he intended to own and operate not only during her life, but also during future years. We decide this second issue also in favor of the petitioner. We hold that the $70,000 indebtedness which Carrie forgave to her son is not includable as an asset of her estate. Decision will be entered under Rule 50. Footnotes
1. William E. Cowan will hereinafter be called "Cowan, Sr."; and his son, William A. Cowan, will be called "Cowan, Jr."↩